UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAKE DOUGLAS-ADAMS
RAUCH,

Petitioner,

Case No. 22-cv-10885

v.

Honorable Shalina D. Kumar
United States District Judge

GARY MINIARD,

Respondent.

**OPINION AND ORDER DENYING PETITION FOR A WRIT OF
HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY,
AND DENYING LEAVE TO APPEAL IN FORMA PAUPERIS**

This is a pro se habeas case brought pursuant to 28 U.S.C. § 2254.
Petitioner Jake Douglas-Adam Rauch ("Rauch") was convicted by a
Tuscola County jury of four counts of first-degree criminal sexual conduct
(CSC-I), Mich. Comp. Laws § 750.520b(1)(f) (sexual penetration
accomplished by force or coercion and causing personal injury), and five
counts of second-degree criminal sexual conduct (CSC-II), Mich. Comp.
Laws § 750.520c(1)(f) (sexual contact accomplished by force or coercion
and causing personal injury) and was sentenced, after remand to the state
trial court, to 15 to 50 years' imprisonment for each CSC-I conviction and
10 to 15 years' imprisonment for each CSC-II conviction. The trial court

ordered that Rauch's sentence for one count of CSC-I was to be served consecutively to the sentences for the remaining convictions, which were to be served concurrently. In his habeas petition, Rauch raises three claims challenging his resentencing. For the reasons set forth, the Court denies Rauch's habeas petition.

## I.   BACKGROUND

Rauch's convictions arose from the sexual assault of a woman in Marlette, Michigan. This Court recites the facts from the Michigan Court of Appeals' opinion affirming his convictions, which are presumed correct on habeas review. 28 U.S.C. § 2254(e)(1); *see Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009):

> This appeal arises from the sexual assault of a female acquaintance of defendant's in Marlette, Michigan. The victim and defendant's niece were friends, and the victim had known defendant and his family for several years. The defense theory at trial was that defendant and the victim engaged in consensual sex.
>
> The prosecution presented evidence that on June 23, 2017, after the victim had broken up with her boyfriend, defendant began sending the victim text messages, which became sexual in nature. The victim repeatedly informed defendant that she did not want to do anything sexual with him and he stopped sending her text messages. The day after defendant stopped sending the victim text messages, the victim reinitiated a text-message exchange with defendant. That led to defendant again expressing his interest in wanting to have sex with the victim. The victim explained that she initiated this text-message exchange

2

because she thought defendant was someone she could vent to; she denied that she was interested in having sex with defendant. According to the victim, she continued to refuse defendant's sexual advances, but she also did not think defendant was serious about wanting to have sex because defendant had a flirty demeanor with others and he had a girlfriend.

On June 24, the victim allowed defendant to pick her up in his truck. The victim testified that she just wanted to drive around town and talk. Instead, defendant drove out of town and then down a dirt road to a deserted field. According to the victim, as defendant was driving, he began touching her inner thigh and then began touching her vagina over her clothing. The victim testified that she became uncomfortable, repeatedly pushed defendant's hand away, and repeatedly told defendant to stop, but defendant continued to touch her. After defendant stopped in the field, he sexually assaulted her inside the truck. According to the victim, defendant forcibly removed her pants, inserted his fingers in her vagina, and put his penis in her vagina while wearing a condom. Afterward, defendant took the victim back to town and dropped her off. The victim was with friends at a party for a while, but later that night, the victim told her mother and others what had happened, and family members came and took the victim to a hospital where the victim underwent a sexual assault nurse examination (SANE).

A detective interviewed defendant the next day. Defendant was crying during the interview and told the detective that he had engaged in sexual intercourse with the victim and that the victim repeatedly told him "no" during the intercourse, but defendant denied that he raped the victim. At trial, defendant testified that he and the victim engaged in consensual sex, but then the victim seemed to be having second thoughts and told him to stop, so he did.

*People v. Rauch*, No. 345330, 2019 WL 6977112, at *1–2 (Mich. Ct. App.

Dec. 19, 2019).

3

The jury convicted Rauch of four counts of CSC-I and five counts of CSC-II. The trial court sentenced him to prison terms of 15 to 50 years for each CSC-I conviction and 10 to 15 years for each CSC-II conviction. The court ordered that Rauch's sentence for one count of CSC-I was to be served consecutively to the sentences for the remaining convictions, which were to be served concurrently. *Id*.

Rauch filed a direct appeal in the Michigan Court of Appeals. The court affirmed his convictions but vacated his sentences and remanded for resentencing. *Id*. The Michigan Court of Appeals concluded that the trial court erroneously assessed 10 points, instead of 5 points, for Offense Variable (OV) 3 of the Michigan sentencing guidelines. *Rauch*, 2019 WL 6977112, at *12. On remand, the trial court corrected the OV 3 scoring error. At that time, Rauch had no objections to his presentence investigation report (PSIR) and requested no additions or deletions. The corrected assessment of five points for OV 3 revised his minimum sentencing guidelines range to 126 to 210 months. *People v. Rauch*, No. 353393, 2021 WL 4394994, at *1 (Mich. Ct. App. Sept. 23, 2021).

While Rauch requested that the trial court sentence him within those guidelines and impose concurrent sentences and not a consecutive

sentence, the trial court declined to do so. The Michigan Court of Appeals

summarized the record as follows:

> The prosecution played two recorded phone calls that defendant
> made from jail. In one of the calls, which defendant made while
> his jury trial pended, he spoke with a young woman in a sexually
> explicit manner and discussed meeting and having sex with her
> after his release from jail. At one point, defendant joked that,
> before he could have sex in his truck, he would need a bumper
> sticker that said, "smile you're on camera." In the other phone
> call which defendant made just after his convictions with his
> mother, defendant stated, "And that f**** [female prosecuting
> attorney], I should have told her you want to f***** know what
> rape is? Wait 'til I get out of prison . . . ."
> At resentencing, the trial court again imposed a consecutive
> sentence. The trial court ruled that defendant's sentence for
> Count 1 (CSC-I) would precede his sentences for the remaining
> counts of CSC-I and CSC-II. The trial court explained the
> propriety of imposing consecutive sentences as follows:

>> [T]he defendant engaged in post-verdict criminal and
>> threatening conduct wherein in a telephone call with
>> his mother from the jail after the verdict he stated in
>> reference to the assistant prosecuting attorney . . .
>> essentially when I get out, I'm gonna show [the
>> female prosecutor] what rape is . . . .

>> The defendant has continued to demonstrate a lack
>> of acceptance of any responsibility nor any remorse
>> as is clearly demonstrated by the statements in the
>> phone calls which were presented today . . . and of
>> most concern is the comments obviously reference
>> [sic] the assistant prosecuting attorney.

>> The post-verdict behavior only highlighted the
>> defendant's disdain for and disrespect for all women
>> and his willingness to perpetrate violence on women
>> as was quite evident by the jury's verdict for the
>> crimes for which he is being sentenced. Of specific

> concern to the Court is his willingness and stated intention to commit similar crimes in the future.
>
> Although the defendant has no prior criminal history, the defendant's COMPAS evaluation which is part and parcel of the [PSIR] indicates that it is highly probable that he has a criminal . . . personality . . . . This seems to be consistent with his actions during the underlying offense, his demeanor while testifying and the content of his testimony, and, again, his post-verdict threats of violence of a sexual nature against a female prosecuting attorney.
>
> Based on these additional factors which were not and cannot be addressed in the defendant's guidelines score, not to mention that he was convicted of nine counts and, quite honestly, the guidelines only take into account three, and in order to adequately protect the public from the defendant now and in the future, a consecutive sentence as to Count 1 is appropriate.

*Rauch*, 2021 WL 4394994, at *1–2.

Rauch filed an appeal as of right challenging his new sentence in the Michigan Court of Appeals, which affirmed the trial court. Rauch subsequently filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims brought in the Michigan Court of Appeals. He also filed an application for leave to appeal the first court of appeals' decision. On January 31, 2022, the Michigan Supreme Court denied the application on the basis that it was not persuaded that the questions presented should be reviewed by the Court. *People v. Rauch*, 969 N.W.2d 52 (Mich. 2022).

6

On April 19, 2022, Rauch filed his habeas petition with this Court, raising the same claims asserted before the Michigan Court of Appeals in his appeal following resentencing. The petition raises three claims:

I.   The [Correctional Offender Management Profiling for Alternative Sanctions or] COMPAS need[s] assessment made part of the presentencing report w[as] not designed to inform sentencing decisions regarding [the] length of sentence or whether to impose consecutive sentences. Further the reliability of COMPAS has not been proven. As such the sentencing court violated Mr. Rauch's constitutional due process rights to be sentenced based upon accurate information and abused its discretion in relying on the [COMPAS] assessment of highly probably criminal activity.

II.  The trial court's decision to impose consecutive sentences was an abuse of discretion.

III. Resentencing must be before a different judge.

(ECF 1-1, PageID.6-17, 18.)

Respondent filed an answer to the petition contending that Rauch's first claim concerning the trial court's failure to sentence him under accurate information is procedurally defaulted, and all claims lack merit.

## II.   LEGAL STANDARD

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id*. at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law

erroneously or incorrectly." *Id*. at 410-11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103.

## III.   DISCUSSION

### A. COMPAS

Rauch first contends that his sentences violate federal due process because the sentencing judge considered a "Correctional Offender Management Profiling for Alternative Sanctions" (COMPAS) risk assessment when imposing his consecutive sentence. Rauch claims that the COMPAS assessment of future risk is unreliable and that the consideration of such unreliable evidence at sentencing violates due process. The Michigan Court of Appeals rejected this claim on direct review, concluding on plain error review that Rauch waived the claim by failing to "challenge the accuracy of any information, including the

9

COMPAS assessment, in his [Presentence Investigation Report]." *Rauch*, 2021 WL 4394994, at *3.

The Court finds Rauch is not entitled to relief on this claim based upon procedural default. Federal habeas relief is precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *Wainwright v. Sykes*, 433 U.S. 72, 85-87 (1977). The doctrine of procedural default applies when a petitioner fails to comply with a state procedural rule, the rule is actually relied upon by the state courts, and the procedural rule is "adequate and independent." *White v. Mitchell*, 431 F.3d 517, 524 (6th Cir. 2006); *see also Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005); *Coleman v. Mitchell*, 244 F.3d 533, 539 (6th Cir. 2001). The last explained state court judgment is used to make this determination. *Ylst v. Nunnemaker*, 501 U.S. 797, 803-805 (1991). If the last state judgment is a silent or unexplained denial, it is presumed that the last reviewing court relied upon the last reasoned opinion. *Id*.

In this case, the Michigan Court of Appeals rendered the last reasoned opinion on this claim. In denying relief, the court relied upon the failure to object to the COMPAS assessment during resentencing. Michigan law requires defendants in criminal cases to present their claims in the trial court to preserve them for appellate review. *See People v. Carines*, 460

Mich. 750, 597 N.W.2d 130, 137–38 (1999). The failure to make a contemporaneous objection is a recognized and firmly-established independent and adequate state law ground for refusing to review trial errors. *Carines*, 460 Mich. at 763; *People v. Stanaway*, 446 Mich. 643, 687, 521 N.W.2d 557, 579 (1994); *see also Coleman v. Thompson*, 501 U.S. 722, 750-751, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

Moreover, plain error review does not constitute a waiver of state procedural default rules. *Girts v. Yanai*, 501 F.3d 743, 755 (6th Cir. 2007); *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000). Nor does a state court fail to sufficiently rely upon a procedural default by ruling on the merits in the alternative. *McBee v. Abramajtys*, 929 F.2d 264, 267 (6th Cir. 1991). The Sixth Circuit has ruled that "where a straightforward analysis of settled state procedural default law is possible, federal courts cannot justify bypassing the procedural default issue." *Sheffield v. Burt*, 731 F. App'x 438, 441 (6th Cir. 2018).

The Michigan Court of Appeals denied relief on this claim based upon a procedural default—Rauch's failure to challenge the COMPAS assessment at resentencing. A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a

11

showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 753; *Gravley v. Mills*, 87 F.3d 779, 784-785 (6th Cir. 1996). To establish cause, a petitioner must establish that some external impediment frustrated his ability to comply with the state's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). A petitioner must present a substantial reason to excuse the default. *Amadeo v. Zant*, 486 U.S. 214, 223 (1988). Such reasons include interference by officials, attorney error rising to the level of ineffective assistance of counsel, or a showing that the factual or legal basis for a claim was not reasonably available. *McCleskey v. Zant*, 499 U.S. 467, 493-494 (1991).

In this case, Rauch fails to raise a claim of ineffective assistance of counsel, or any other reason, to excuse the procedural default. When a habeas petitioner fails to establish sufficient cause to excuse a procedural default, the Court need not address the issue of prejudice. *Smith v. Murray*, 477 U.S. 527, 533 (1986); *Long v. McKeen*, 722 F.2d 286, 289 (6th Cir. 1983).

Rauch also fails to demonstrate that a fundamental miscarriage of justice has occurred. The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of

one who is actually innocent. *Murray v. Carrier*, 477 U.S. 478, 479-480 (1986). To be credible, such a claim of actual innocence requires a petitioner to support the allegations of constitutional error with new reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Moreover, actual innocence means factual innocence, not mere legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998). Again, Rauch makes no such showing.

This claim is thus barred by procedural default and does not warrant federal habeas relief.

B. Consecutive Sentencing

Next, Rauch argues that the trial court abused its discretion by imposing consecutive sentencing. The Michigan Court of Appeals rejected this argument on direct appeal, concluding that the trial court had discretion to impose a consecutive sentence and did so properly under the facts of the case and in consideration of Rauch's threatening post-verdict behavior and his demeanor during sentencing. *Rauch*, 2021 WL 4394994, at *4-6.

To the extent that Rauch argues that the trial court's imposition of consecutive sentencing violates his constitutional rights, his claim lacks merit. While "concurrent sentencing is the norm" in Michigan, consecutive sentencing may be imposed "if specifically authorized by statute." *People v.*

*Brown*, 560 N.W.2d 80, 81 (Mich. Ct. App. 1996). Mich. Comp. Laws §

750.520b specifically authorizes a court to order a term of imprisonment for

first-degree criminal sexual conduct "to be served consecutively to any term

of imprisonment imposed for any other criminal offense arising from the

same transaction." Therefore, the consecutive nature of Rauch's sentence

is specifically authorized by statute and permitted by the federal

constitution. *See Oregon v. Ice*, 555 U.S. 160, 165 (2009) (finding that

consecutive sentences are constitutionally permissible). Thus, he is not

entitled to relief.

Moreover, to the extent that he argues that the consecutive sentence

is disproportionate, such a claim is also meritless. "[T]he Eighth

Amendment does not require strict proportionality between crime and

sentence. Rather, it forbids only extreme sentences that are 'grossly

disproportionate' to the crime." *Harmelin v. Michigan*, 501 U.S. 957, 1001

(1991) (quoting *Solem v. Helm*, 463 U.S. 277, 288 (1983)). "'[O]nly an

extreme disparity between crime and sentence offends the Eighth

Amendment.'" *Cowherd v. Million*, 260 F. App'x 781, 785 (6th Cir. 2008)

(quoting *United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000)). If a

sentence remains within the statutory limits, trial courts have historically

been given wide discretion in determining "the type and extent of

punishment for convicted defendants." *Williams v. New York*, 337 U.S. 241, 245 (1949). *See also Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000) ("A sentence within the statutory maximum . . . generally does not constitute cruel and unusual punishment.") (internal quotation omitted).

Rauch's sentence is not grossly disproportionate or excessive. His sentence did not exceed the statutory maximum for any of his crimes. *See* Mich. Comp. Laws § 750.520b(2)(a) (statutory maximum for CSC-I is life imprisonment). The trial court acted within its discretion and this Court finds no extreme disparity between the crime and sentence that would implicate Eighth Amendment concerns.

Lastly, to the extent that Rauch argues that his sentence violates state law, this claim is not cognizable on habeas review because habeas review is limited to alleged violations of the Constitution, laws, or treaties of the United States. *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).

C. Resentencing

Lastly, Rauch argues that he is entitled to resentencing before a new judge. The Michigan Court of Appeals declined to address this argument on direct review, concluding that "because defendant is not entitled to resentencing, we need not address his argument that resentencing should be before a different trial judge." *Rauch*, 2021 WL 4394994, at *6. The

Court agrees. Because Rauch has not demonstrated that he is entitled to habeas relief on his other claims, the question of whether he should be resentenced before a new judge is non-cognizable on habeas review and moot.

## IV. CERTIFICATE OF APPEALABILITY

The Court declines to grant a certificate of appealability because Rauch has not made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To make this showing, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a habeas petition is denied on procedural grounds, a certificate of appealability may issue only "when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id*. at 484. For the reasons stated in this opinion, reasonable jurists would not find this Court's assessment of Rauch's claims to be debatable or wrong or that its

procedural ruling was incorrect. Therefore, the Court will deny a certificate of appealability.

## V.      CONCLUSION

For the foregoing reasons, the Court **DENIES WITH PREJUDICE** Rauch's habeas petition. The Court also **DENIES** a certificate of appealability and **DENIES** permission to proceed in forma pauperis on appeal.

**IT IS SO ORDERED.**

<u>s/Shalina D. Kumar</u>
SHALINA D. KUMAR
United States District Judge

Dated:  June 13, 2025